## SUPREME COURT — APPELLATE DIVISION — SECOND DEPARTMENT.

May 21, 1920.

## THE PEOPLE v. REBECCA WANSKER.

(191 App. Div. 875.)

(1) MURDER IN FIRST DEGREE—SELF DEFENSE—EVIDENCE, HEARSAY—RES GESTAE.

On the trial of an indictment for murder in the first degree, to which the defense interposed is self-defense, evidence of statements made by

the deceased to a third person, not in the presence of the defendant, two days prior to the homicide, to the effect that the defendant was a desperate person and he was afraid of her, is not admissible as it is purely hearsay, and it is not admissible as the declarations of a party or as part of the *res gestae*.

(2) SAME—EVIDENCE IN REBUTTAL WHERE ISSUE AS TO CHARACTER OF DECEASED NOT RAISED.

The evidence, which was offered in rebuttal, was not admissible under the rule that when the plea is self-defense, and the defendant has been permitted to offer evidence as to the character of the alleged agressor for violence or the traits of violence natural to the aggression, then the prosecution may offer like evidence in rebuttal, as no issue was made by the defendant of the character or reputation of the deceased by the offer of any evidence thereof, and her testimony that she killed the deceased while he was attempting to force her to sexual intercourse did not raise that issue.

(3) SAME.

The statements could not be regarded as evidence as to the character of the defendant.

(4) SAME—GENERAL CHARACTER OF DEFENDANT NOT PUT IN EVIDENCE BY· DEFENDANTS TESTIFYING.

And furthermore, while the defendant by taking the stand subjected herself to attack upon her credibility, she did not put her general character in issue by becoming a witness, nor did she do so by testifying to the act of violence on the part of the defendant preceding the homicide.

APPEAL by the defendant, Rebecca Wansker, from a judgment of the Supreme Court of Kings county, rendered on the 5th day of June, 1919, convicting her of the crime of manslaughter in the first degree, upon an indictment charging murder in the first degree, for shooting and killing Samuel Silverberg with a revolver on April 7, 1919, and also from an order denying defendant's motion to set aside the verdict and for a new trial made upon the minutes.

The appellant, Mrs. Rebecca Wansker, 44 years old, owned a house at Coney Island which she had leased to Silverberg, the deceased, reserving the right to occupy certain rooms during the winter months. Disputes between them arose during the 1918 occupation. On March 3, 1919, about a month before the killing, Silverberg tried to reoccupy the leased premises. There

was a refusal to let him enter, so that he resorted to police aid to obtain admission. He continued to live in this house, with the defendant occupying certain rooms, but there were proceedings to dispossess one another.

The fatal affray started at the bathroom entrance. The prosecution showed that as Silverberg came into the hallway, appellant fired at him a revolving pistol which she carried on her person. It is not disputed that her second shot pierced the heart, causing Silverberg's death.

Appellant's plea was self-defense; that she was defending her chastity. Her version was that when Silverberg attempted to assault her, by the bathroom door, she fired twice in resisting him.

A certificate of reasonable doubt was granted (108 Misc. Rep. 84), but appellant could not give the bail required, and so remained in prison.

*Joseph A. Firpo,* for the appellant.

*Harry G. Anderson, Assistant District Attorney (Harry E. Lewis, District Attorney,* with him on the brief), for the respondent.

JENKS, P. J.:

The defendant, a woman 44 years old, was tried upon an indictment for murder in the first degree for shooting Silverberg to death on April 7, 1919, and was convicted of manslaughter. Her plea was self-defense. She testified that as she went to the bathroom common to the house where she and Silverberg lived, Silverberg attempted to force her to an act of sexual intercourse, she resisted, and in the struggle she fired the fatal shot from a revolving pistol which she carried on her person. The People called Gussie Tonjes as a witness in rebuttal. She testified that on or about April 5, 1919, she talked with Silverberg, the deceased, in her shop in the borough of The Bronx, but the defendant was not present. " Q. What

did Mr. Silverberg say to you ? A. He asked me to come out and live with him for a few days; it wouldn't cost me anything, because his landlady expects to move out, and to be sure that [she] will get nothing on him, I should be there to testify in case she would try anything against him, because she is always trying to frame him up; and I told him that I will be out there Sunday—that will be April the 6th—because I am going to a welcome home party, and I will come over to see them; so I did. Q. Just the conversation between you and him. A. Well, he told me that Mrs. Wansker, his landlady [the defendant], expects to move out Tuesday and that he wishes that I will come out and only stay for a couple of days with him until she is out of the house, because she is a desperate woman and he is afraid of her, because she is liable to do most anything." This testimony had been met by objection, exception, motion to strike out and exception.

I think that the admission of this testimony of the statements of the deceased was error.

1. The statements were not evidence. They were hearsay and were not within any of the exceptions to the rule against hearsay. Of course, the statements were not a dying declaration, because they were made two days before the homicide. The statements were not the declarations of a party. " The person injured—or the acting prosecutor, is not a party, therefore his utterances out of court are hearsay. He may be called as a witness, whereon, if his testimony differs from his declarations *in pais,* they may be shown to discredit him. If he is dead, the evidence is lost, the same as when any other witness dies." (2 Bishop New Crim. Proc. [2d ed.], 928.) The principle of *res gestœ* did not apply. The character of the deceased was no part of the *res gestœ.* (3 Greenl. Ev. [15th ed.], § 27.) Further, the words neither explained nor accompanied any act which was related to the defendant. (1 Greenl. Ev. [15th ed.], § 108.) In the note to this section it is said: " It follows that if there is no act with which the declarations

can be connected, they are not admissible." (See, too, Tilson v. Terwilliger, 56 N. Y. 273, 277.) In Underhill on Criminal Evidence (§ 330) it is said: "But declarations prior to the crime forming no part of the *res gestæ* of a relevant act and not communicated to the accused, or if known to him not acquiesced in, or statements and accusations by deceased which are narrative in their form and character and inadmissible as dying declarations are generally rejected." Wharton on Criminal Evidence (10th ed. [Hilton], § 225), after stating the principle, writes: "Hence on an indictment for murder, * * * declarations of deceased before his death that he was about to disappear; or that he expected violence; * * * are inadmissible." (See, too, Clark v. State, 35 Ind. 492, and authorities cited.) Aside from being naked words, the statements are not related to the homicide. (Montag v. People, 141 Ill. 75; Weyrich v. People, 89 id. 90, and cases cited.)

2. Even if the testimony as to these declarations was evidence, the evidence was not admissible in this case. *It was offered and received in rebuttal.* When the plea is self-defense, and the defendant has been permitted to offer evidence as to the character of the alleged aggressor for violence or the traits of violence natural to the aggression, under the rule of People v. Rodawald (177 N. Y. 408, 423, 18 N. Y. Crim. 142), then the prosecution may offer like evidence *in rebuttal.* But the defendant had not made an issue as to the character or reputation of the deceased, either because she had testified to the violent act which she resisted or by the offer of any evidence as to the reputation or character of the deceased. Hence there was no issue that made the evidence in question admissible *as rebuttal,* and it was not admissible as part of the People's case. (See Wigm. Ev.; §§ 890, 891, 925, 59; Kelly v. People, 229 Ill. 81-83 et seq., 86; Ben v. State, 37 Ala. 103; Pound v. State, 43 Ga. 88; Thomas v. People, 67 N. Y. 223, 224; People v. Carlton, 57 Cal. 85; State v. Eddon, 8 Wash. 292; People v. Powell, 87 Cal. 362; State v. Chaffin, 56 S. C. 434.

24

See, too, People v. Webster, 139 N. Y. 81,. 82.)    This principle is not departed from in People v. Gallagher (75 App. Div. 39; affd., 174 N. Y. 505), but *is recognized.*    For the court in that case, although saying that the defense had not offered evidence of the general reputation of the deceased, did say that by various kinds of evidence the defense had sought to show that the deceased was of " a quarrelsome, morose, irritable, vindictive disposition, and subject to violent outbursts of temper, and the making of threats against the defendant." Thus the defendant *by evidence* had raised the issue that justified the rebuttal.

3. I think that Burke v. People (4 Hun, 481) is authority. Burke was on trial for mayhem committed upon McLaughlin in a grog shop.    The complainant, from some fancied danger from the defendant, had tried to borrow a pistol and an ice-pick.    The district attorney asked the bartender of the grog shop : " Do you remember what McLaughlin said about Burke's coming into the store? and he answered, Yes, sir; he told me, when I wanted him to go and sit down and go to sleep, that he was afraid Burke would come in and beat him."    The court (Davis, P. J., Daniels and Brady, JJ.) said, per Brady, J.: " Upon the exceptions thus stated the appeal in this matter depends.    In reference to the first, it may be said that the statement of the complainant before the occurrence, when the prisoner was not present, was not admissible.    It is not necessary to cite authorities for a rule so well established by the law of evidence.    *    *    *    The statement was injurious to the defense of the prisoner, because he claimed to have acted in self-protection; and the effect of it was to make the prisoner the aggressor, and to put the complainant in fear of bodily harm, thus justifying his resort to the poker when he could get neither pistol nor ice-pick, when, on his own testimony, there was nothing from which he was authorized to draw the conclusion that the prisoner meant to assail him in such way as to put him in any jeopardy."

4. Such declarations could not be regarded as evidence as to the character of the defendant. (Weyrich v. People, 89 Ill. 97.) By taking the witness stand the defendant subjected herself to attack upon her credibility, but did not put her general character in issue, nor had she done so by testifying to the act of violence incidental to the fatality. (Authorities supra.) Therefore, even evidence against the character of defendant was not admissible on the part of the prosecution. (See People v. Lingley, 207 N. Y. 406; People v. Richardson, 222 id. 103, 107.)

The danger of recognition of such naked self-serving declarations is obvious. Fabrication of " evidence " of this kind presents little difficulty. I cannot think that the admission of this testimony was negligible. The instance is not isolated, for two other witnesses, Messinger and King, were allowed to give like testimony. There were no eye-witnesses to the homicide. The defendant had testified to an attempted act of violence little less than murder. She was entitled to be tried upon the evidence, and yet the jury were in effect informed that there was evidence that the state of the deceased was fear of his life at her hands as a desperate woman who would stop at nothing.

It seems to me that the error was capital (People v. Richardson, supra, 107), and that we should reverse the judgment and grant a new trial.

MILLS, RICH, PUTNAM and BLACKMAR, JJ., concur.

Judgment of conviction reversed and new trial granted.